```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF OKLAHOMA
```

BEATRICE BIRDTAIL,            )
                              )
            Plaintiff,        )
                              )
v.                            )        Case No. CIV-15-403-RAW-KEW
                              )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## REPORT AND RECOMMENDATION

Plaintiff Beatrice Birdtail (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on June 8, 1960 and was 53 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant has worked in the past as a phlebotomist, restaurant owner and manager, and file clerk. Claimant alleges an inability to work beginning October 14, 2011 due to limitations resulting from left ankle and lower back problems.

3

**Procedural History**

On April 18, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On March 4, 2014, Administrative Law Judge John Belcher ("ALJ") conducted a hearing in Tulsa, Oklahoma. On May 1, 2014, the ALJ issued an unfavorable decision. On August 17, 2015, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform less than a full range of light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to discuss the evidence at steps two and three, identify the relevant listings, or evaluate Claimant's mental impairments under the appropriate listing; and (2) failing to prove that Claimant had

acquired sufficient skills to meet the requirements for the alternative sedentary cashier without the need for other skills.

**Steps Two and Three Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of the left ankle, degenerative disc disease of the lumbar spine with radiculopathy, peripheral neuropathy, asthma, bilateral hip bursitis, and status post right knee arthroscopy. (Tr. 12). The ALJ concluded that Claimant retained the RFC to perform light work. In so doing, he found Claimant could lift, carry, push, and pull more than 20 pounds occasionally and ten pounds frequently, was able to stand or walk up to two to four hours in an eight hour workday, and was able to sit for six to eight hours in an eight hour workday. The ALJ determined Claimant could occasionally climb stairs, balance, bend, or stoop, kneel, crouch, and crawl but could not climb ladders, ropes, and scaffolding. (Tr. 13).

The vocational expert who testified at the hearing found Claimant's past relevant work as a restaurant owner/manager was semi-skilled and allowed her to acquire the transferrable skill of cashiering. (Tr. 19). The expert identified the representative job of check cashier which Claimant was capable of performing at a semi-skilled, sedentary exertion level. The ALJ found this job to

exist in sufficient numbers both regionally and nationally. <u>Id</u>. As a result, the ALJ found Claimant was not disabled from October 14, 2011 through the date of the decision. (Tr. 20).

Claimant's first issue of error has multiple components. Claimant initially contends the ALJ failed to identify the specific listing or listings which he considered at step three of the sequential evaluation. To that end, the ALJ found that "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (Tr. 13). In explaining this finding, the ALJ set out the following:

> In making this finding, the undersigned gave particular consideration to all of claimant's impairments. Despite the claimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

(Tr. 13).

At step three, the ALJ is required to determine whether Claimant's impairment "is equivalent to one of a number of listed impairments that the Secretary acknowledges as so severe as to preclude substantial gainful activity." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996) quoting <u>Williams v. Bowen</u>, 844 F.2d

6

748, 751 (10th Cir. 1988). In Clifton, the Tenth Circuit reversed the district court's affirmation of the ALJ's decision, finding he "did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed impairment." Id.

This requirement was clarified further in Fischer-Ross v. Barnhart, 431 F.3d 729 (10th Cir. 2005). The Tenth Circuit stated that its holding in Clifton should not be read to require that a decision be reversed if the discussion of the evidence at step three is insufficiently detailed. "[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." Id. at 733. The court may then apply the harmless error analysis to "supply a missing dispositive finding" in examining the other subsequent steps of the evaluation. Id. at 733-34.

Claimant twisted her ankle in March of 2010 which affected her ability to bear weight on the joint. She continued to experience pain and was placed in a walking boot. (Tr. 572). Claimant was diagnosed with tendonitis in June of 2010 and received trigger

point injections. (Tr. 570). Claimant also experienced hip pain referred from the back. (Tr. 564).

In July of 2010, Claimant was out walking with her husband when she jumped out of the way to avoid a drunken driver and re-injured her ankle. Claimant was noted to have localized pain and tenderness over the medial malleolus, medial joint line. She did not have much pain with varus or valgus stressing of the area, but with plantar flexion and dorsiflexion. A CT scan showed some sclerosis of the medial aspect of the talus and a cavitation in the area at the junction of the talus and talar neck. Claimant was placed in a fracture orthosis. (Tr. 562). X-rays did not show a fracture or dislocation. (Tr. 630).

In October of 2010, Claimant underwent an MRI of her ankle. It revealed a complete tear of the anterior talofibular ligament and a partial tear of the peroneal brevis tendon. Soft tissue swelling was noted as well as a small joint effusion. (Tr. 558).

In November of 2010, Claimant received a cortisone injection in the ankle after a flare up of pain. In August of 2011, Claimant had difficulty exercising to lose weight as recommended due to her ankle pain. Claimant was to be sent to a specialist to address the continuing ankle problems. (Tr. 525). Claimant continued to have foot and ankle pain and an additional MRI was requested. (Tr.

524). In October of 2011, Claimant was found to have chronic left ankle pain and decreased range of motion. No changes were noted from the prior MRI. Claimant still exhibited a partial tear in the peroneus brevis and anterior talofibular ligament. Spurring along the dorsal surface of the midfoot in the talonavicular region was found to be likely degenerative. A small amount of bone marrow edema was shown within the talus which appeared to have worsened from the prior exam. Subchondral cystic changes were also noted in the calcaneus. (Tr. 518).

On October 14, 2011, Claimant was attended by Dr. Darnell Blackmon, an orthopedist. Dr. Blackmon found Claimant needed surgery and that conservative treatment had only worsened her condition. He noted Claimant had "exquisite pain" over the peroneal tendon with passive inversion and resisted eversion. Tenderness was also noted over the tibialis anterior tendon. Pain was found with passive and active dorsiflexion of her ankle and pain with resisted dorsiflexion. (Tr. 512-13).

On November 14, 2011, Claimant underwent surgery where an extensive tenosynovectomy of the peroneal brevis and peroneal longus tendon sheath was performed. The ankle was extensively debrided and then repaired by tubularization. (Tr. 404).

Post-surgery, Claimant did very well but rated her pain as 6

9

out of 10. The physician noted a little erythema, moderate swelling. She was placed in a non-weightbearing short leg cast. (Tr. 397).

On December 15, 2011, Claimant had the cast removed and the incisions were healing nicely. She showed decreased range of motion secondary to pain and swelling. Her sutures were removed and she was placed in a non-weightbearing boot. (Tr. 408).

In January of 2012, Claimant was put in a brace and physical therapy was ordered. In May of 2012, Claimant wanted to return to work. Dr. Blackmon noted minimal swelling and some weakness but she had full range of motion and good strength. (Tr. 406). In September of 2012, Claimant experienced pain at the posteromedial cortex of her tibia with some in the forefoot. She had some swelling. She was found to have calcaneovalgus on forefoot abduction and pain over the sinus tarsi in the left. Claimant was diagnosed with bilateral tibia stress fracture and bilateral feet pes planus. (Tr. 471-72). Claimant also complaint of bilateral pain in her hips and left ankle on September 24, 2012 as well as Bell's Palsy, hypothyroidism, and anxiety. She stated that sitting down for awhile and driving caused her pain. (Tr. 465).

On October 2, 2012, Claimant was evaluated by Dr. Wojciech Dulowski. He noted Claimant had decreased lumbar lordosis and was

10

very tender with spasms over the lumbar spine. Range of motion of the lumbar spine was restricted. He did not appreciated 18 points of tenderness for fibromyalgia. (Tr. 427). He assessed Claimant with chronic back pain, mechanical after epidural injection; history of surgery of left ankle joint with tendon release; history of bilateral carpal tunnel syndrome release; morbid obesity; history of DM; history of HTN; peripheral neuropathy; and asthma. (Tr. 428).

On December 27, 2012, Dr. Jason Sparks found Claimant had greater trochanteric bursitis and iliotibial band syndrome in her bilateral hips and spondylolisthesis grade 1 at L5-S1 with degenerative disc disease. (Tr. 638). He recommended injection treatment for the bursitis. Id.

In January 9, 2013, Claimant showed an antalgic gait in her left hip with tenderness over the greater trochanter. Claimant was diagnosed with bilateral hip trochanteric bursitis with left knee probable medial meniscus tear. (Tr. 777-78).

In May of 2013, Claimant underwent arthroscopic knee surgery. The surgery repaired medial and lateral meniscus tears in the left knee, chondromalacia, and extensive synovitis under the knee cap. (Tr. 785-86). Claimant continued to walk with an antalgic gait due to bilateral bursitis. (Tr. 771).

In order to evaluate whether Claimant met or equaled Listings 1.02 and 1.08, the ALJ was required to determine whether Claimant was able to ambulate effectively. Listing 1.00B2b defines the "inability to ambulate effectively." Id. In relevant part, Listing 1.00B2b provides:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. . . .

Id. at Listing 1.00B2b(1)-(2).

The ALJ did not provide any explanation for his apparent rejection of these requirements by any reference to the medical record or to the relevant case authority. This lack of explanation

12

precludes this Court to effectively evaluate his findings at step three. Moreover, Defendant does not provide any argument or authority to demonstrate that the omission of detail by the ALJ constituted "harmless error." Given the state of Claimant's condition in the record, this Court cannot make such a conclusion from an independent evaluation of the ALJ's findings. On remand, the ALJ shall provide further information in his evaluation including the specific listings he considered and the evidence which he evaluated in reaching his conclusions at step three.

Claimant also challenges the findings of the ALJ at step two in failing to identify her depression and anxiety as severe impairments. Again, the record indicates Claimant was diagnosed with these conditions. While Defendant denies that Claimant ever claimed a mental impairment in the application process, Claimant reported that she had trouble completing tasks, problems with concentration, and problems getting along with others. (Tr. 208). Claimant also testified that she was taking anti-depressant medication. (Tr. 268-69). The ALJ's decision does not indicate that he considered these conditions in his RFC evaluation. (Tr. 13). On remand, the ALJ shall consider the medical record with regard to Claimant's mental conditions and set forth his conclusions in sufficient detail to enable this Court to evaluate

13

his decision.

## Evaluation of Transferrable Skills

Claimant, citing to Tenth Circuit authority, contends the ALJ erred when he concluded she acquired transferrable skills from her past relevant work to enable her to do sedentary cashiering work. The Tenth Circuit found that "the cashiering jobs listed in the *Dictionary of Occupational Titles* range from unskilled to skilled. Thus, it is clear that not all cashiering jobs are alike." <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1187 (10th Cir. 2001). The Court determined that an analysis of the past work must be made to determine whether the cashiering involved skilled work such as computing or reporting cash receipts and other similarly skilled tasks. In this case, the ALJ did not solicit sufficient information from the vocational expert concerning the nature of the cashiering work in which Claimant engaged in her past relevant work. On remand, the ALJ shall obtain such evidence.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED**

for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of February, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE